845 F.2d 326
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MECHANICAL RESEARCH & DESIGN, A DIV. OF CONSOL. MANUFACTURED
PRODUCTS, INC., Plaintiff-Appellee,
v.
The STANDARD FIRE INSURANCE CO., A SUBSIDIARY OF AETNA LIFE
AND CAS.; Aetna Life and Casualty, Defendants-Appellants.
 No. 87-3240.
 United States Court of Appeals, Sixth Circuit.
 April 28, 1988.
 
 Before LIVELY and RALPH B. GUY, Jr., Circuit Judges, and AVERN COHN, District Judge.*
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Defendant, The Standard Fire Insurance Company (Standard), appeals from a summary judgment granted in a declaratory judgment action instituted by Mechanical Research & Design (Mechanical). Standard, which insured Mechanical, had refused to defend or indemnify Mechanical in a pending products liability lawsuit in which Mechanical was a defendant. The basis for Standard's refusal was late notice by Mechanical of the underlying accident.
 
 
 2
 The district court concluded that the delay in notifying Standard was reasonable under the circumstances and, since Standard had demonstrated no actual prejudice, it must defend and indemnify. Judge McQuade resolved this matter in a written opinion in which he addressed all of the arguments of the parties now being made on appeal.
 
 
 3
 Upon review, we conclude that Judge McQuade reached the right conclusion and affirm primarily on the basis of his opinion. We write briefly, in addition, for further clarification.
 
 I.
 
 4
 On November 3, 1982, Terry DeWitt was working in a sewer line in which an airplug manufactured by Mechanical was being used to hold back water. Due to a failure of the airplug, or other causes, water entered the sewer line and, although DeWitt was able to get out, he died a week later from an infection brought about by the contaminated water.
 
 
 5
 On December 8, 1982, Michael Boland, an officer of one of Mechanical's distributors, learned of the accident from DeWitt's employer. He contacted J. Glenn Satterthwaite, the president of Mechanical, and relayed the news. Boland told Satterthwaite that he had inquired of DeWitt's employer whether there was any problem with the airplug, and was assured that there was not. None of Mechanical's employees or agents were involved with the sewer project, and the only information Mechanical had as to the accident came from Boland's one telephone call.
 
 
 6
 Subsequent to his conversation with Boland, Satterthwaite had a conversation with James Dick, an insurance agent who had formerly serviced Mechanical's insurance account. Satterthwaite told Dick what little information he had about the accident. Dick advised Satterthwaite that at that time he had nothing to report to the insurance company, but that he should notify the company as soon as further details of the accident became known.
 
 
 7
 Nothing further occurred relative to this incident until Mechanical was served with a summons and complaint in February, 1985, which it promptly forwarded to Standard. Sometime thereafter, Standard notified Mechanical that it was declining defense and coverage due to the fact that Mechanical had not notified Standard when it first learned of the accident.
 
 II.
 
 8
 Mechanical is a Virginia corporation and Standard is a Connecticut corporation. The accident took place in Ohio, but the parties agree that Virginia law is to be applied in construing this contract of insurance. The insurance policy in question contained the following language:
 
 
 9
 4. Insured's Duties in the Event of Occurrence, Claim or Suit.
 
 
 10
 (a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof and the names and addresses of the injured and of available witnesses shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable.
 
 
 11
 The contention of the parties can be easily summarized. Standard contends that it did not get notice of the "occurrence" from Mechanical "as soon as practicable." It further contends that, under Virginia law, prejudice is presumed in such circumstances. Dairyland Insurance Co. v. Hughes, 317 F.Supp. 928 (W.D.Va.1970).
 
 
 12
 Mechanical argues that the first time that it knew it was at risk in this matter was when it was served with the suit papers, and so its prompt notification to Standard at this point in time meets the contract requirements. Mechanical also argues that under Virginia law any delay must amount to a "substantial and material" violation of the policy provisions. North River Insurance Co. v. Gourdine, 205 Va. 57, 135 S.E.2d 120 (1964). It also argues as a matter of general insurance law that a delay in giving notice only creates a rebuttable presumption of prejudice, and that the insured is allowed to show that no prejudice actually resulted.
 
 
 13
 Each of the parties, as might be expected, challenges the other party's interpretation of Virginia law, although there is no factual dispute as to what occurred.
 
 III.
 
 14
 Insurance cases such as this one reach the federal courts under its diversity jurisdiction. In such cases, state substantive law is applied. When the area of substantive law is insurance, one thing is certain regardless of the state involved. There will be a plethora of cases reaching results not always consistent and which results are highly fact specific. Rather than try to make a definitive statement on Virginia insurance law as applied to an Ohio accident for the benefit of a Virginia and a Connecticut corporation, we choose to credit the findings and conclusions made in the district court.
 
 
 15
 Mechanical was a manufacturer. It had nothing to do with the actual field application of its products. When it first learned of this accident, which occurred far from its home office, it was assured that there was no claim that one of its products was responsible. It had no reason to believe to the contrary, nor is there anything to suggest that further investigation was mandated. Mechanical heard nothing further from anyone, notwithstanding that the DeWitt accident was investigated by the Ohio Industrial Commission and the Occupational Safety and Health Administration and that an attorney for DeWitt's estate was preparing a lawsuit. This factual situation is vastly different from those in the cases relied on by Standard where an insured knew or reasonably should have known he caused an accident or was being held responsible and failed to notify the carrier.
 
 
 16
 In short, we conclude, as did the district court, that a reasonable interpretation of Mechanical's conduct is that they did not know an "occurrence" had happened which would have implicated its coverage under the multi-peril policy it had with Standard. Under such circumstances, when it notified Standard upon being served with the summons and complaint, it was providing the notice required by the policy.
 
 
 17
 AFFIRMED.
 
 
 
 *
 Honorable Avern Cohn, United States District Court for the Eastern District of Michigan, sitting by designation