JAMES RIVER INSURANCE
COMPANY, Plaintiff,

v.

Karine L. MAIER, Individually and
as the Executrix of the Estate of
James R. Maier, Defendant.

Case No. CV410–062.

United States District Court,
S.D. Georgia,
Savannah Division.

June 27, 2011.

Sina Bahadoran, partner, Todd M.
Davis, associate, Hinshaw & Culbertson,
LLP, for Plaintiff, James River.

John Clayton Davis, John Clayton Davis, P.S., for Defendant, Karine Maier.

## ORDER

WILLIAM T. MOORE, JR., District Judge.

Before the Court is Plaintiff's Motion for Summary Judgment. (Doc. 31.) For the reasons that follow, this motion is **GRANTED.**[1] The Clerk of Court is **DIRECTED** to close this case.

## BACKGROUND

This action for declaratory judgment originates from an October 14, 2008 highway accident involving a tractor trailer that resulted in the death of James R. Maier. (Doc. 37 at 2; Doc. 1, Attach. 1 ¶ 1.) The tractor trailer was operated by an employee of Green Eyes USA, Inc. ("Green Eyes"). (Doc. 1, Attach. 1 ¶ 18.) Green Eyes allegedly relied on former[2] Defendant Kannon & Kannon Insurance, Inc. ("Kannon") to perform "driving record inquiries, background investigations, and monitoring of motor vehicle records" to "determine which applicants or employees were suitable for employment and/or retention as tractor trailer drivers." (Doc. 1, Attach. 11 ¶¶ 21–22.)

Following the accident, Defendant Maier filed suit in the State Court of Chatham County, naming former Defendant Kannon as one of several defendants.[3] (CV409–172, Doc. 1, Attach. 3.) In that suit, Defendant Maier concludes that former Defendant Kannon was "negligent for the hiring, employing, and retention" of the tractor trailer driver involved in the fatal collision. (Id. ¶ 33.) As a basis for this claim, De-fendant Maier alleges, among other grounds, that former Defendant Kannon "knew or should have known that prior to October 14, 2008, [the tractor trailer driver] had a history and disposition of operating tractor trailers in a negligent and reckless manner." (Id. ¶ 23.) Apparently, the tractor trailer driver "had been cited for, and convicted of, at least thirteen moving violations." (Id. ¶ 24.) By negligently performing this duty and various other functions for Green Eyes, former Defendant Kannon allegedly caused and is purportedly liable for the wrongful death of James R. Maier. (Id. ¶ 44.)

This action, however, is concerned only with availability of insurance coverage related to that action. Plaintiff James River issued and delivered an Insurance Professionals Liability Insurance Policy ("Policy") to Defendant Kannon. (Doc. 37 ¶ 7.) Coverage under that Policy is the basis for this dispute. Plaintiff seeks a declaratory judgment that the Policy does not provide coverage for Defendant Maier's claim against former Defendant Kannon. (Doc. 31 at 2.) In its Motion for Summary Judgment, Plaintiff presented three arguments in support of its position: (1) the bodily injury coverage exclusion; (2) the absence of coverage based on the definition of professional services; and (3) the punitive damages coverage exclusion. (Doc. 31.) Defendant Maier responded by, among other arguments, attempting to recategorize the loss so that the bodily injury exclusion does not apply, and by claiming that Defendant Kannon's negligence will result in the "loss of assets, revenue, and profit damages" to Green Eyes. (Doc. 37 at 13.)

---

**1.** As a result, Plaintiff's Motion to Strike Expert Witness Report of Joseph Vaccaro is **DISMISSED AS MOOT,** (Doc. 29.)

**2.** On November 12, 2010, Defendants Kannon & Kannon Insurance, Inc. and Jake Kanonitz were dismissed for lack of personal jurisdic-tion. (Doc. 50.) For simplicity, the Court's reference to Defendant Kannon includes both former Defendants.

**3.** This matter was subsequently removed to this Court. (CV409–172, Doc. 1.)

## ANALYSIS

### I. *DEFENDANT MAIER'S "BRIEF IN SUPPORT OF NOT PROCEEDING"*

■ As an initial matter, Defendant Maier has also filed a "Brief in Support of Not Proceeding in the Above Styled Case" (Doc. 53) in response to the Court's order dismissing two other Defendants (Doc. 50). In this pleading, Defendant Maier argues that a case or controversy no longer exists and that this Court would be rendering an advisory opinion by proceeding with this case. (Doc. 53.) Although the Eleventh Circuit Court of Appeals has cautioned against exercising jurisdiction in declaratory judgment actions concerning insurance coverage absent a judgment establishing the insured's liability, the decision to entertain such an action is within the district court's discretion. *Edwards v. Sharkey*, 747 F.2d 684, 686 (11th Cir.1984). Additionally, the Supreme Court of the United States has held that a case or controversy exists to support the exercise of jurisdiction in a declaratory judgment action even in the absence of a judgment against the insured. *Id.* (*citing Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941)).

■ After a review of the posture of this case, the Court concludes that it has ample jurisdiction to entertain this dispute because there is an actual controversy between the parties: whether Defendant Maier's claim against former Defendant Kannon is covered under an insurance policy issued by Plaintiff. As evidenced by a substantial record, the parties have diametrically opposite views of the effect of the Policy's language. To the extent that the exercise of the Court's jurisdiction is discretionary in this case, the Court elects to employ that discretion to decide this dispute.[4]

### II. *SUMMARY JUDGMENT STANDARD*

According to Fed.R.Civ.P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing

---

4. Plaintiff has indicated that it will proceed against former Defendant Kannon in a Florida court. However, that action does little under Florida law to decide the interpretation of this Policy against Defendant Maier. *See Independent Fire Ins. Co. v. Paulekas*, 633 So.2d 1111, 1113 (Fla.Dist.Ct.App.1994) ("A declaratory action obtained by an insurer against its insured is not binding on a third-party claimant who was not a party to the declaratory judgment action."). Plaintiff has forecast that Defendant Maier "cannot likely be sued elsewhere" (Doc. 52 at 6.), and Defendant Maier has made no suggestion of any other alternative forum where she would be subject to or is willing to consent to jurisdic-

tion. As a result, the Court concludes that Plaintiff would not "have an adequate remedy if the action were dismissed." Fed.R.Civ.P. 19(b)(4). Finally, resolution of the controversy between Plaintiff and Defendant Maier is proper at this time, especially in light of the other action pending before this Court. *Vt. Mut. Ins. Co. v. Everette*, 875 F.Supp. 1181, 1185 (1995) ("[W]hen an insured party is dismissed from a declaratory judgment action to determine coverage, the injured third party has standing to remain in the suit and defend the action."). 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (*quoting* Fed.R.Civ.P. 56 advisory committee notes).

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The substantive law governing the action determines whether an element is essential. *DeLong Equip. Co. v. Wash. Mills Abrasive Co.,* 887 F.2d 1499, 1505 (11th Cir.1989).

As the Supreme Court explained:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. *Matsushita,* 475 U.S. at 587–88, 106 S.Ct. 1348. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. *See, e.g., Tidwell v. Carter Prods.,* 135 F.3d 1422, 1425 (11th Cir.1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." *Barfield v. Brierton,* 883 F.2d 923, 933–34 (11th Cir.1989).

III. *CHOICE OF LAW & FLORIDA CONTRACT INTERPRETATION STANDARD*

██ The parties appear to agree that Florida law governs this insurance contract. While Plaintiff has thoroughly explained the choice of law in its brief (Doc. 31 at 6), Defendant Maier omitted this analysis in favor of citation to and application of Florida cases (Doc. 37 at 6). Regardless, the reasoning is as follows. In this diversity action, this Court must apply the choice-of-law rules of the forum state of Georgia. *Boardman Petroleum v. Federated Mut. Ins. Co.,* 135 F.3d 750, 752 (11th Cir.1998). Georgia applies the traditional rule of lex loci contractus, *Convergys Corp. v. Keener,* 276 Ga. 808, 811, 582 S.E.2d 84, 86 (Ga.2003), and an "insurance contract is constructively made at the place where the contract is delivered," *McGow v. McCurry,* 412 F.3d 1207, 1217 (11th Cir.2005) *(quoting Fed. Ins. Co. v. Nat'l Distrib. Co.,* 203 Ga.App. 763, 767, 417 S.E.2d 671, 674–75 (1992)). Plaintiff has stated that the contract was issued and delivered to Defendant Kannon in Florida, and Defendant Maier has not contested this assertion. (Doc. 31.) For these reasons, Florida law governs this Policy and related dispute.

██ Florida courts interpret insurance contracts according to their plain meaning, with the language of the policy being the most important factor. *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.,* 913 So.2d 528, 532–37 (Fla.2005). However, ambiguous policy provisions are construed against the insurer in favor of coverage. *Deni Assocs. v. State Farm Fire & Cas. Ins., Co.,* 711 So.2d 1135 (Fla.1998). Florida courts find a policy provision ambiguous when it is "susceptible to more than one reasonable interpretation, one providing coverage and the [ ]other limiting coverage." *Auto–Owners Ins. Co. v.*

*Anderson,* 756 So.2d 29, 34 (Fla.2000). As a threshold matter, this occurs "only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction." *State Farm Mut. Auto. Ins. Co. v. Pridgen,* 498 So.2d 1245, 1248 (Fla.1986).

## IV. *BODILY INJURY COVERAGE EXCLUSION*

■ Foremost, the Court finds the body injury coverage exclusion issue dispositive of this matter. Accordingly, Plaintiff's other arguments in favor of summary judgment need not be addressed. The language of the Policy states that

> [t]his policy does not apply to any "Claim" against the "Insured": ... Based on or directly or indirectly arising out of any actual or alleged "bodily injury" to or sickness, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof.

(Doc. 30, Attach. 2 at 6.) "Bodily Injury" is a defined term in the Policy and means "injury to the body, sickness or disease, including death resulting from such injuries" and "mental injury, mental anguish, mental tension, emotional distress, pain and suffering, or shock, whether or not resulting from injury to the body, sickness, disease or death of any person." (*Id.* at 4.) Contrary to Defendant Maier's line of reasoning, the term "arising out of" is not ambiguous: Florida courts have consistently defined it as meaning "originating from," "having its origin in," "growing out of," "flowing from," "incident to," or "having a connection with." *Taurus Holdings,* 913 So.2d at 532. Although this standard requires a casual connection or relationship that is more than a mere coincidence between the conduct, it does not require proximate cause. *Id.*

From the clear and unambiguous Policy terms, Defendant Maier's claims against Defendant Kannon are not covered. Defendant Maier's own complaint against Defendant Kannon summarizes the underlying lawsuit as "an action for *wrongful death* as the result of an incident, which occurred on October 14, 2008, when a *tractor trailer struck and killed* James R. Maier...." (Doc. 1, Attach. 1 at 1 (emphasis added).) Quite obviously, the underlying lawsuit for wrongful death originates from and has a connection with a claim for "Bodily Injury" as that term is defined in the Policy.

The task of distinguishing Defendant Maier's claim against Defendant Kannon from this obvious Policy exclusion is not an easy one, as evidenced by Defendant Maier's attempt to recategorize an evident claim for bodily injury as one, instead, for a "loss of assets, revenue, and profit damages" to Green Eyes. (Doc. 37 at 13.) This amounts to merely a change in perception without actually altering the true nature of the suit. Although applying Georgia law, similar arguments have been rejected by the Eleventh Circuit. *Henning v. Cont. Cas. Co.,* 254 F.3d 1291 (11th Cir.2001) (rejecting attempt to recategorize excluded claim for bodily injury as one for negligent failure to obtain insurance). Regardless of how Defendant Maier chooses to view her claim, the damages she seeks and the events precipitating the loss are not covered under the clear and unambiguous Policy language.

Finally, Defendant Maier conjectures that "it is difficult to imagine a factual situation where [Defendant Kannon] would be subject to an E & O claim, judgment, award or settlement, that did not originate with, or was not otherwise connected with, a motor vehicle collision involving 'bodily injury', [sic] death, or at the very least a tangible property damage claim." (Doc. 37 at 9.) The court declines to entertain this discourse. The policy is not wholly illusory. Certain claims are covered; oth-

ers are excluded-a nearly universal practice by insurers. The question before the Court is not what the Policy does cover, but rather what it does not cover. Defendant Maier's claims against Defendant are not covered because the policy excludes coverage for claims "arising out of any actual or alleged 'bodily injury,' " a term that specifically encompasses "injury to the body, . . . *including death* resulting from such injuries." (Doc. 30, Attach. 2 at 4, 6 § emphasis added.) The Court declines the invitation to render an advisory opinion as to whether hypothetical situations would be covered under the Policy. Contrary to Defendant Maier's contentions, however, bodily injury exclusions do not result in a policy being worthless or ambiguous. *See, e.g., Fireman's Fund Ins. Co. v. Univ. of Ga. Athletic Ass'n,* 288 Ga.App. 355, 363, 654 S.E.2d 207 (2007) (distinguishing a collegiate athlete's claim for bodily injury disability insurance proceeds he would have received if his team had fulfilled his insurance procurement re-

quest from one where "the plaintiff claims that the insured's wrongful conduct caused or created the conditions giving rise to bodily injury"). The language of the policy is clear, unambiguous, and obviously excludes Defendant Maier's claim against Defendant Kannon. As the Eleventh Circuit stated while applying Florida law, "[W]e will not make the parties to one contract abide by the terms of another." *Shaw v. Nat'l Union Fire Ins. Co.,* 605 F.3d 1250, 1256 (11th Cir.2010). Therefore, Plaintiff's Motion for Summary Judgment is **GRANTED.**

## CONCLUSION

For the reasons above, Plaintiff's Motion for Summary Judgment is **GRANTED.** The Clerk of Court is **DIRECTED** to close this case.